UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| HENRY EARL PRICE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  4:14 CV 1843 JMB |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER
OF UNITED STATES MAGISTRATE JUDGE**

This cause is on appeal from an adverse ruling of the Social Security Administration.

The suit involves Applications for Disability Insurance Benefits under Title II of the Social

Security Act, and Supplemental Security Income under Title XVI of the Act.  Plaintiff has filed a

Brief in Support of his Complaint, and the Commissioner has filed a Brief in Support of her

Answer, and Plaintiff a Reply thereto.  The parties consented to the jurisdiction of the

undersigned pursuant to 28 U.S.C. § 636(c).

**I.      Procedural History**

On June 21, 2011, Plaintiff Henry Earl Price filed Applications for Supplemental

Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, et seq.,

and Disability Insurance Benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401 et. seq.

(Tr. 129-43)[1]  Plaintiff claimed that his disability began on June 3, 2011, as a result of right

shoulder injury.  On initial consideration, the Social Security Administration denied Plaintiff's

---

[1]"Tr." refers to the page of the administrative record filed by the Defendant with her Answer
(Docket No. 11/filed January 14, 2015).

claims for benefits. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").

On April 3, 2013, a hearing was held before an ALJ. (Tr. 27-43) Plaintiff testified and was

represented by counsel. (Id.) Medical Expert Dr. John Menio and Vocational Expert James

Israel also testified at the hearing. (Tr. 43-51, 116-19) Thereafter, on June 20, 2013, the ALJ

issued a decision denying Plaintiff's claims for benefits. (Tr. 10-23) After considering the

representative's brief and the treatment records from Grace Hill Murphy Clinic dated September

11, 2013, the Appeals Council found no basis for changing the ALJ's decision and denied

Plaintiff's request for review on September 2, 2014. (Tr. 1-6, 215, 395-401) The ALJ's

determination thus stands as the final decision of the Commissioner. 42 U.S.C. § 405(g).

## II.     Evidence Before the ALJ

### A.     Hearing on April 3, 2013

#### 1.     Plaintiff's Testimony

At the hearing on April 3, 2013, Plaintiff testified in response to questions posed

by the ALJ and counsel. (Tr. 27-46) Plaintiff testified that he is forty-three and is left-handed.

(Tr. 31) Plaintiff has a driver's license, and he completed high school. (Tr. 31) Plaintiff lives

with his sister and nine-year old nephew, and his sister financially supports him. (Tr. 39)

Plaintiff testified that he became disabled after he was in a car accident on June 3, 2011.

Dr. Jay Keener performed surgery and inserted five pins into Plaintiff's right shoulder. Plaintiff

testified that Dr. Keener placed a permanent restriction of not lifting more than five pounds and

indicated that if Plaintiff knocked his right shoulder out of the socket, Dr, Keener would have no

choice but "just amputate it." (Tr. 33) Plaintiff testified that he has no limitations of his left

arm. Plaintiff stated that Dr. Keener never gave him a home exercise program for his shoulder.

(Tr. 36)  In response to the ALJ's question, Plaintiff indicated that he could reach only four inches away from his body with his right arm, and he is not able to push or pull open a door using his right arm.  (Tr. 39)

Plaintiff takes medication for post-traumatic seizures ("PTS") and high blood pressure. (Tr. 33)  Plaintiff testified that he experiences seizures two to three times a month, and his seizure medication makes him "grouchy."  (Tr. 35, 40)  Plaintiff stated that he injured his finger while goofing around and boxing -- he punched the other person and broke his finger.  (Tr. 33)

Plaintiff testified that he has looked for a job; because he cannot lift more than five pounds with his right arm, no one will hire him.  (Tr. 35)  Plaintiff indicated that he has some problems dressing and his sister helps him but he can button a shirt with his left hand.  (Tr. 36) Plaintiff can lift a gallon of milk with his left hand and reach out in front and pick something up. (Tr. 39)  With his right arm, Plaintiff testified that he cannot reach out in front and pick something up; he cannot reach out four inches in front of his body with his right arm; and he cannot push or pull a door open using his right arm.  (Tr. 39)

Plaintiff last worked for two years at Ruth Industries making valve cover gaskets.  (Tr. 41)  That job required Plaintiff to remove the gaskets and package the gaskets for shipping.  (Tr. 41)  Before that, Plaintiff worked at a grocery store washing sheet pans but he was laid off because he was taking too many bathroom breaks.  Plaintiff also worked at a number of restaurants as a cook and a dishwasher.  (Tr. 43)

### 2.      Testimony of Non-Examining Medical Expert

Dr. John Menio, a board certified doctor in family medicine and a non-examining independent medical expert, testified at the hearing.  (Tr. 43-46)  After reviewing Plaintiff's

medical file before the hearing, Dr. Menio noted Plaintiff has a history of a fracture and dislocation of his right shoulder in June 2011, and Plaintiff underwent an open reduction and internal fixation of that shoulder and then physical therapy.  (Tr. 45)  Dr. Menio testified that Plaintiff continues to have significant limitations with respect to the use of his right shoulder, including decreased range of motion, difficulty extending his right arm, and chronic pain syndrome based on Plaintiff's testimony.  Moreover, because Plaintiff claims he cannot reach his right arm out four inches in front of his body, Dr. Menio found that Plaintiff's significant limitations of his right shoulder equaled Listing 1.02(B).  Dr. Menio further found that Plaintiff could not pick up or lift anything, or push or pull even in a sedentary situation.  The ALJ questioned Dr. Menio's finding, noting that during examination, a treating doctor found Plaintiff had normal musculoskeletal musculature, no joint deformity or abnormalities, and a normal range of motion.  (Tr. 45-46)  Dr. Menio explained those findings were made during one examination, and the rest of the medical records showed Plaintiff has significant limitations.  (Tr. 46)

### 3.    Testimony of Vocational Expert ("VE")

Vocational Expert James Israel, a vocational rehabilitation counselor, testified at the hearing.  (Tr. 46-51)  The VE characterized Plaintiff's vocational background to include work experience as a dishwasher or hand cleaner, a cook, and a packaging job on the line.  (Tr. 47)

The ALJ asked the VE to assume someone similar to Plaintiff in age, education, and the same past work experience who can lift twenty pounds on occasion and ten pounds frequently; stand or walk about six hours, and sit at least six to eight hours.  The ALJ further noted that the hypothetical individual would have to avoid climbing ladders, ropes, and scaffolds, crawling,

and jobs that required reaching above shoulder level with the non-dominant right hand and upper extremity, and working at unprotected, dangerous heights and around unprotected, dangerous machinery. Lastly, the hypothetical individual would have to avoid working alone, around open flame and big bodies of water and avoid operating motor vehicles. (Tr. 47-48) The VE explained that such a hypothetical individual with those limitations could not perform any of Plaintiff's past work but there would be other work that such individual could perform such as a small component assembler, a product inspector, and a limited number of packing and wrapping jobs. (Tr. 48-49)

Next, the ALJ asked the VE to assume the hypothetical individual "was limited to, with the non-dominant hand, just using it for support, could grasp and finger and things like that, basically could only move it about four inches from the person's body to reach, and couldn't, ... , hold about five pounds in it at a time. And add that restriction to the other restrictions. Would there be jobs he could perform?" (Tr. 49-50) The VE indicated that there would be no jobs that individual could perform. (Tr. 50)

Plaintiff's counsel asked the VE to change the limitations in the original hypothetical as follows: "the reaching to ... occasional but in any direction with that right upper extremity." (Tr. 50) The VE indicated that no sustainable work would be available and explained that "to reach in all directions limited to occasionally" would mean that individual could not reach in any direction for two-thirds of the work day.

### B.     Forms Completed by Plaintiff

In his Disability Report - Appeal, Plaintiff did not allege any worsening or new impairments since he filed his last completed disability report. (Tr. 195)

### III.    Medical Records and Other Records

#### A.    General History

The medical evidence in the record shows that Plaintiff has a history of right shoulder fracture/dislocation, PTS, and a fractured finger.  (Tr. 218-401)  Although the Court has carefully considered all of the evidence in the administrative record in determining whether the Commissioner's adverse decision is supported by substantial evidence, only the medical records relevant to the ALJ's decision and the issues raised by Plaintiff on this appeal are discussed.

To obtain disability insurance benefits, a claimant must establish that he was disabled within the meaning of the Social Security Act not later than the date his insured status expired, in this case December 31, 2015.  Pyland v. Apfel, 149 F.3d 873, 876 (8th Cir. 1998) ("In order to receive disability insurance benefits, an applicant must establish that she was disabled before the expiration of her insured status."); see also 42 U.S.C. §§ 416(I) and 423(c); 20 C.F.R. § 404.131.


#### B.    Barnes-Jewish Hospital - Dr. Jay Keener (Tr. 218-326)

Between June 2, 2011, and August 29, 2011, Dr. Jay Keener and emergency room doctors at Barnes-Jewish Hospital Health Services, provided Plaintiff treatment following injury of his right shoulder.

On June 2, 2011, Plaintiff sought treatment in the emergency room for his right shoulder and reported "[s]omebody pushed me this AM after I woke up and then my right shoulder was hurt and dislocated."  (Tr. 219)  Plaintiff explained to the treating resident that his right shoulder pain started when someone pushed him during an altercation,[2] and the resident diagnosed

---

[2]The medical records contradict Plaintiff's sworn testimony that he injured his shoulder in an automobile accident.  (Compare Tr. 32 and Tr. 238-40)

Plaintiff with right anterior shoulder dislocation. (Tr. 240) An x-ray of Plaintiff's right shoulder showed persistent anterior dislocation with Hill-Sachs deformity. (Tr. 250) After being admitted to Trauma Service and the emergency room doctors having difficulty reducing his shoulder, Dr. Keener examined Plaintiff and reviewed conservative versus operative treatment. In the Discharge Orders, Plaintiff's final diagnosis was right glenoid fracture requiring a closed reduction with a referral to Dr. Keener for surgery. (Tr. 258)

On June 7, 2011, Dr. Keener performed Bankart open reduction and internal fixation of Plaintiff's right glenoid fracture and open rotator repair. (Tr. 279) In the Discharge Summary, Dr. Keener noted that Plaintiff's "history of dislocation was somewhat inconsistent with the severity of his injury. He states that he was pushed by someone and woke up the next morning with a funny feeling in his shoulder." (Tr. 311) Dr. Keener directed Plaintiff to wear a gunslinger splint on his right shoulder and to begin early aggressive range of motion treatment in physical therapy. (Tr. 283)

In the first postoperative visit on June 20, 2011, Dr. Keener noted that Plaintiff needed to have good quality physical therapy but Plaintiff does not have any insurance. (Tr. 297) Plaintiff reported being unemployed. (Tr. 305) Dr. Keener provided Plaintiff with a home program under the direction of his therapist. In follow-up treatment on July 13, 2011, Dr. Keener noted that Plaintiff had not started physical therapy to date and sent Plaintiff to physical therapy for active assisted range of motion starting in one week. (Tr. 300) An x-ray showed a healing internally stabilized anterior/interior glenoid fracture and new heterotopic ossification adjacent to the lateral aspect of Plaintiff's proximal humerus. (Tr. 277)

On August 29, 2011, Plaintiff reported not having any insurance so he had been receiving little therapy but Plaintiff had been working on exercises on his own. (Tr. 319) Plaintiff further noted that he wanted to try to work again. Examination showed Plaintiff could actively elevate to about 100 degrees with some scapular substitution and external rotation of 40 degrees, and Plaintiff had only subtle weakness with resisted abduction and a strong external rotation. Dr. Keener continued Plaintiff's pain medication regimen and gave Plaintiff a new therapy prescription and directed Plaintiff to continue his stretching and active motion. Dr. Keener requested Plaintiff return for follow-up treatment in six to eight weeks. (Tr. 319) An x-ray showed a healing, internally-fixated right anteroinferior glenoid fracture and right shoulder rotator cuff repair. (Tr. 323, 326) Laytons is listed as Plaintiff's employer. (Tr. 325)

In a "To Whom It May Concern" letter dated August 12, 2011, Dr. Keener opined as follows:

> Mr. Henry Price is a patient of Dr. Keener's. He underwent a right shoulder open reduction internal fixation of a glenoid fracture and an open rotator cuff repair of the supraspinatus tendon on 6/7/11 due to an injury he sustained on 6/2/11. He is recovering from surgery and is slowly regaining use of his right arm. Currently his restrictions include no pushing, pulling or lifting over 5lbs, and no overhead motion. Due to the severity of his injury it is likely that Mr. Price will not regain full use of his right arm and will have permeant restrictions, however, at this time it is impossible to know exactly what those restrictions will be. I anticipate that at 6 months post surgery Mr. Price will be at his maximum medical improvement and at that time we will know more definitively what the limitations of his right arm will be.

(Tr. 312)[3]

### C.    Grace Hill Murphy Clinic - Drs. Donald Brancato/Alan Zond (Tr. 329-55, 389-94)

---

[3]Dr. Keener's letter is in conflict with Plaintiff's testimony before the ALJ. Plaintiff testified that Dr. Keener imposed a permanent, five pound lifting restriction, and that another injury to Plaintiff's right shoulder would result in amputation. (Tr. 32)

Between December 8, 2010, and March 7, 2013, a number of doctors at Grace Hill Murphy Clinic provided Plaintiff treatment for hypertension, hepatitis B, seizures, a fracture of his fourth finger on his right hand, and right shoulder pain.

During treatment on December 8, 2010, and on April 26, 2012, Plaintiff admitted he had not taken his hypertension medications.  (Tr. 336, 353)

During physical examination on June 12, 2012, Dr. Zond found Plaintiff to have a normal musculature, no joint deformity or abnormalities, and a normal musculoskeletal range of motion. (Tr. 332)  Plaintiff reported having experienced a grand mal seizure and Dr. Zond ordered Plaintiff not to drive until he authorized Plaintiff to drive.  (Id.)

During a medication refill and treatment for hypertension on February 8, 2013, Plaintiff reported experiencing right shoulder pain.  (Tr. 390-91)  The Referral Information lists Plaintiff's chronic conditions as  suspected carrier of hepatitis B, hypertension, and post traumatic seizures.  (Tr. 393)

A March 7, 2013, x-ray of Plaintiff's right shoulder showed normal results.  (Tr. 389)

In a follow-up visit on September 11, 2013, Plaintiff reported being noncompliant with his medications and requested medication refills.  (Tr. 397)  Although Plaintiff noted that he is stressed about his job, Plaintiff declined medications for stress.  (Tr. 397-98)

**D.**      **St. Louis Connect Care Urgent Care - Emilio Bianchi** (Tr. 357-87)

On March 6, 2012, Plaintiff sought treatment after injuring his right hand.  Plaintiff reported that he hurt his hand when he punched someone while playing around and boxing.  (Tr. 378-80, 384)  On March 9, 2012, Plaintiff returned for treatment of a possible fracture to the fourth finger on his right hand and reported not having taken his hypertension medications.  (Tr.

374)  Dr. Bianchi placed orthopedic strapping on Plaintiff's right hand.  (Tr. 376)

On February 12, 2013, Plaintiff received treatment for joint pain in his shoulder region.
(Tr. 360)  Plaintiff reported having shoulder pain and a limited range of motion, restricted above
ninety degrees.  (Id.)  The diagnostic testing showed internal fixation of Plaintiff's right shoulder
and minimal degenerative joint disease on the acromioclavicular joint.  (Tr. 363)

## IV.     The ALJ's Decision

The ALJ found that Plaintiff met the insured status requirements of the Social Security
Act through December 31, 2012.  Plaintiff has not engaged in substantial gainful activity since
June 3, 2011, the alleged onset date.  (Tr. 15)  The ALJ found Plaintiff has the severe
impairments of seizure disorder, status post fracture dislocation of the right shoulder with
anterior glenoid fracture, status post full thickness tear of the supraspinatus tendon of the right
shoulder, status post open reduction and internal fixation of the right glenoid fracture, and status
post open rotator cuff repair of the supraspinatus tendon, but no impairment or combination of
impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No.
4.  (Tr. 15-16)  The ALJ also found that Plaintiff's reported hypertension and hepatitis B were
non-severe.

The ALJ did not credit Plaintiff's self-reported limitations.  Broadly speaking, the ALJ
concluded that Plaintiff's subjective complaints were contradicted by the record as a whole.  (Tr.
18)

The ALJ found that Plaintiff has the residual functional capacity to perform light work
and is able to lift and carry twenty pounds occasionally and ten pounds frequently; stand and/or
walk for a total of six to eight hours in an eight-hour workday; and sit for a total of six to eight

hours in an eight-hour workday.  The ALJ found that Plaintiff should avoid crawling and climbing ladders, ropes, and scaffolds; and working at unprotected, dangerous heights, and around unprotected, dangerous machinery.  Further, the ALJ found that Plaintiff should avoid jobs that require reaching above the shoulder level with the non-dominant right hand and right upper extremity; operating motor vehicles; and working alone around open flame and bodies of open water.  (Tr. 16-17)

Based on the foregoing RFC, and the VE's testimony, the ALJ found Plaintiff is unable to perform his past relevant work.  (Tr. 21)  Plaintiff has at least a high school education and is able to communicate in English.  The ALJ found that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs existing in significant numbers in the national economy, Plaintiff could perform the representative jobs of a packer and wrapper, small component assembler, and a product inspector.  The ALJ concluded Plaintiff has not been disabled within the meaning of the Social Security Act at any time from June 3, 2011, the alleged onset date, through the date of the decision.  (Tr. 22)

## V.    Discussion

To be eligible for DIB and SSI, Plaintiff must prove that he is disabled.  Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); Baker v. Secretary of Health & Human Servs., 955 F.2d 552, 555 (8th Cir. 1992).  Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  Additionally, the claimant will be found to have a disability

"only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The Commissioner has promulgated regulations outlining a five-step process to guide an ALJ in determining whether an individual is disabled. First, the ALJ must determine whether the individual is engaged in "substantial gainful activity." If he is, then he is not eligible for disability benefits. 20 C.F.R. § 404. 1520(b). If he is not, the ALJ must consider step two which asks whether the individual has a "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment, he is not eligible for disability benefits. If the claimant has a severe impairment, the ALJ proceeds to step three in which he must determine whether the impairment meets or is equal to one determined by the Commissioner to be conclusively disabling. If the impairment is specifically listed, or is equal to a listed impairment, the claimant will be found disabled. 20 C.F.R. § 404.1520(d). If the impairment is not listed, or is not the equivalent of a listed impairment, the ALJ proceeds to step four which asks whether the claimant is capable of doing past relevant work. If the claimant can still perform past work, he is not disabled. 20 C.F.R. § 404.1520(e). If the claimant cannot perform past work, the ALJ proceeds to step five in which the ALJ determines whether the claimant is capable of performing other work in the national economy. In step five, the ALJ must consider the claimant's "age, education, and past work experience." Only if a claimant is found incapable of performing other work in the national economy will he be found disabled. 20 C.F.R. § 404.1520(f); see also

Bowen, 482 U.S. at 140-41 (explaining five-step process).

Court review of an ALJ's disability determination is narrow; the ALJ's findings will be affirmed if they are supported by "substantial evidence on the record as a whole." Pearsall, 274 F.3d at 1217. Substantial evidence has been defined as "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Id. The court's review "is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The Court will affirm the Commissioner's decision as long as there is substantial evidence in the record to support her findings, regardless of whether substantial evidence exists to support a different conclusion. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).

In reviewing the Commissioner's decision, the Court must review the entire administrative record and consider:

1.    The credibility findings made by the ALJ.

2.    The claimant's vocational factors.

3.    The medical evidence from treating and consulting physicians.

4.    The claimant's subjective complaints relating to exertional and non-exertional activities and impairments.

5.    Any corroboration by third parties of the claimant's impairments.

6.    The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

Plaintiff contends that the ALJ committed reversible error when: (1) the ALJ assessed Plaintiff's credibility; (2) the ALJ accorded no weight to Dr. Menio's opinion given at the hearing; and (3) ALJ did not support his RFC determination with sufficient medical evidence.

## A. Credibility Determination

Plaintiff contends that the ALJ's decision is not supported by substantial evidence on the record as a whole, because the ALJ allegedly failed to properly assess his credibility. Plaintiff argues that the ALJ failed to consider his explanations for his lack of medical treatment and relied on his activities when making his credibility determination. As explained below, the ALJ's adverse credibility determination is well-supported and justified.

The Eighth Circuit has instructed that, in the course of making an RFC determination, the ALJ is to consider the credibility of a claimant's subjective complaints in light of the factors set forth in Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). See also 20 C.F.R. §§ 404.1529, 416.929. Accordingly, the undersigned will begin with a review of the ALJ's credibility determination. See Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005) (it is clearly established that, before determining a claimant's RFC, the ALJ must first evaluate the claimant's credibility).

The factors identified in Polaski include: a claimant's daily activities; the location, duration, frequency, and intensity of his symptoms; any precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of his medication; treatment and measures other than medication he has received; and any other factors concerning his impairment-related limitations. See Polaski, 739 F.2d at 1322; 20 C.F.R. §§ 404.1529, 416.929. An ALJ is not, however, required to discuss each Polaski factor and how it relates to a claimant's credibility.

See Partee v. Astrue, 638 F.3d 869, 865 (8th Cir. 2011) (stating that "[t]he ALJ is not required to discuss methodically each Polaski consideration, so long as he acknowledged and examined those considerations before discounting a [plaintiff's] subjective complaints") (internal quotation and citation omitted); Samons v. Astrue, 497 F.3d 813, 820 (8th Cir. 2007) (stating that "we have not required the ALJ's decision to include a discussion of how every Polaski factor relates to the [plaintiff's] credibility"). Finally, this Court reviews the ALJ's credibility determination with deference and may not substitute its own judgment for that of the ALJ. See Gregg v. Barnhart, 354 F.3d 710, 713 (8th Cir. 2003) (holding that "[i]f an ALJ explicitly discredits the [plaintiff's] testimony and gives good reasons for doing so, [the reviewing court] will normally defer to the ALJ's credibility determination"); Pearsall, 274 F. 3d at 1218.

In this case, the ALJ concluded that Plaintiff's "symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone," and noted that he must consider the Polaski factors in addition to the objective medical evidence, when assessing Plaintiff's credibility. (Tr. 17) The ALJ found that Plaintiff's "medically determinable impairments could reasonably have been expected to produce the alleged symptoms, but the alleged intensity, persistence, duration, and impact on functioning are not credible or consistent with the totality of the evidence." (Tr. 18) In evaluating Plaintiff's credibility, the ALJ determined that Plaintiff was not fully credible, in part, because the objective medical record is inconsistent with his allegations of the severity of his impairments. As explained below, the ALJ gave sufficient reasons for his adverse credibility finding and substantial evidence in the record supports the ALJ's reasoning.

The ALJ noted that Plaintiff's treatment history is inconsistent with his allegations of the

severity of his impairments inasmuch as the record shows a gap of treatment for his right shoulder problems from August 29, 2011 until February 8, 2013. (Tr. 19) The few treatment records that exist do not indicate a worsening of his condition. See Turpin v. Colvin, 750 F.3d 989, 994 (8th Cir. 2014) (affirming adverse credibility determination based in part on medical records showing improvement in claimant's condition and lack of ongoing treatment). In assessing the credibility of Plaintiff's complaints regarding the severity of his symptoms, the ALJ considered that Plaintiff did not receive regular treatment for his right shoulder. The failure to seek regular treatment also detracts against a claimant's credibility. See Casey v. Astrue, 503 F.3d 687, 693 (8th Cir. 2007). As noted by the ALJ, during treatment at Grace Hill, Plaintiff made "little to no significant complaints of right shoulder or arm pain." (Tr. 19) During treatment at Grace Hill, only once, on February 8, 2013, did Plaintiff report experiencing right shoulder pain. Likewise, Plaintiff did not testify that he was ever denied medical treatment because of an inability to pay for such. See Goff v. Barnhart, 421 F.3d 785, 792 (8th Cir. 2005) (failure to take medication was relevant to credibility determination given lack of any evidence that failure was attributable to lack of finances); Riggens v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999) (claimant's argument that he could not afford medical care was appropriately discounted given lack of any evidence that he was denied low-cost or free medical care).

Next, the ALJ noted that, although Plaintiff was to return in six to eight weeks, Plaintiff never returned for follow-up treatment with Dr. Keener. Moreover, Dr. Keener's examination on August 29, 2011, showed Plaintiff could actively elevate to about 100 degrees with some scapular substitution and external rotation of 40 degrees, and he had only subtle weakness with resisted abduction and a strong external rotation. After receiving treatment on August 29, 2011,

Plaintiff failed to schedule follow-up treatment six to eight weeks later although Dr. Keener requested Plaintiff do so.  The ALJ considered Plaintiff's failure to follow up with Dr. Keener after August 2011 as indicating that Plaintiff "had no significant, ongoing or permanent limitations in [h]is right upper shoulder or arm."  (Tr. 21)  See Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995) ("While not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem.")

The ALJ also discussed how Plaintiff's hearing testimony was inconsistent with, and in some instances contradicted by, the treatment records.  In his hearing testimony, Plaintiff testified that Dr. Keener permanently restricted him to lifting no more than five pounds.  Dr. Keener's treatment notes, however, show that this restriction was temporary, and any permanent restrictions would be determined "6 months post surgery [when Plaintiff would] be at his maximum medical improvement and at that time [he would] know more definitively what the limitations of [Plaintiff 's] right arm."  (Tr. 312)  Likewise, the ALJ noted that, although Plaintiff testified that he injured his right shoulder in a motor vehicle accident, the medical evidence indicates that Plaintiff reported that his injury stemmed from an altercation with another person.  Further, the ALJ noted that although Plaintiff testified that he could not extend his right arm more than four inches in front of his body, in March 2012, he reported injuring his finger while boxing with a friend.

These inconsistencies between Plaintiff's sworn testimony and the objective medical evidence are significant.  The ALJ was entirely justified in discrediting Plaintiff's credibility in this regard.  See Ply v. Massanari, 251 F.3d 777, 779 (8th Cir. 2001) (noting a claimant's inconsistent statements as a factor to consider in determining claimant's credibility); Johnson v.

Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001) ("Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility."); Van Vickle v. Astrue, 539 F.3d 825, 828 (8th Cir. 2008) ("An ALJ may discount a claimant's subjective complaints if there are inconsistencies in the record as a whole."); See also McCoy v. Astrue, 648 F.3d 605, 614 (8th Cir. 2011) (inconsistencies in record detract from a claimant's credibility). The record in this case supports the ALJ's decision in this regard.

The ALJ noted a lack of an objective medical basis to support Plaintiff's subjective complaints. This is an important factor the ALJ should consider when evaluating those complaints. See Barrett v. Shalala, 38 F.3d 1019, 1022 (8th Cir. 1994) (the ALJ was entitled to find that the absence of an objective medical basis to support claimant's subjective complaints was an important factor in evaluating the credibility of her testimony and of her complaints). The record is devoid of medical records establishing Plaintiff's limited range of motion restricted above ninety degrees. Likewise, there is no evidence whatsoever to support Plaintiff's claim that further injury to his shoulder would result in an amputation. Indeed, the most recent imaging studies showed a internal fixation of Plaintiff's right shoulder and minimal degenerative joint disease on the acromioclavicular joint. The ALJ's decision shows that he explicitly considered the instant record, including Plaintiff's treatment record. In so doing, the ALJ articulated the inconsistencies between the record and Plaintiff's subjective statements.

The ALJ also observed that Plaintiff received relatively conservative treatment compared to the severity of his alleged pain. (Tr. 19) "Conservative treatment of pain through over-the-counter medication and limited use of prescription medication can be inconsistent with a claimant's allegations of disabling pain." Sangel v. Astrue, 785 F.Supp.2d 757, 776-77 (N.D.

Iowa 2011); See Singh v. Apfel, 222 F.3d 448, 453 (8th Cir. 2000) ("A Claimant's allegations of disabling pain may be discredited by evidence that the Claimant has received minimal treatment and/or has taken only occasional pain medications.") Likewise, there is ample evidence of noncompliance with his medications. The failure to follow a prescribed course of treatment detracts from a claimant's credibility. See O'Donnell v. Barnhart, 318 F.3d 811, 819 (8th Cir. 2003).

Despite the numerous reasons to discount Plaintiff's credibility, the ALJ did give some weight to Plaintiff's subjective testimony of an impaired ability to use his right upper extremity overhead. The ALJ concluded that Plaintiff "should avoid jobs that require reaching above the shoulder level with the non-dominant right hand and right upper extremity." (Tr. 17)

Based on the foregoing, substantial evidence in the record as a whole supports the ALJ's adverse credibility finding in this case. See Gregg, 354 F.3d at 713 (reviewing court should give deference to the ALJ's credibility determination).

**B.**     **Weight Given to Non-Examining Medical Expert's Opinion**

Plaintiff also takes issue with the ALJ's decision to give no weight to Dr. Menio's opinion that Plaintiff's shoulder impairment and pain precluded him from working. As explained below, substantial evidence supports the ALJ's decision in this regard.

"It is well settled that an ALJ may consider the opinion of an independent medical advisor as one factor in determining the nature and severity of a claimant's impairment." Harris v. Barnhart, 356 F.3d 926, 931 (8th Cir. 2004). But "[t]he opinions of non-treating practitioners who have attempted to evaluate the claimant without examination do not normally constitute substantial evidence on the record as a whole." Shontos v. Barnhart, 328 F.3d 418, 427 (8th

Cir.2002).  The SSA regulations recognize that, "because nonexamining sources have no examining or treating relationship with [the claimant], the weight [the SSA] will give their opinions will depend on the degree to which they provide supporting explanations for their opinions 20 C.F.R. § 404.1527(d)(3).  The ALJ may reject the conclusions of any medical expert, whether hired by the government or the claimant, if they are inconsistent with the record as a whole.  See id.; Finch v. Astrue, 547 F.3d 933, 937 (8th Cir. 2008).  The opinion of a consulting physician, who examines a claimant once, or not at all, generally receives very little weight.  Singh, 222 F.2d at 452.

In this case, Dr. Menio, a non-examining independent medical expert, opined that Plaintiff's significant limitations of his right shoulder equaled Listing 1.02(B).  Although a treating doctor during examination found Plaintiff had normal musculoskeletal musculature, no joint deformity or abnormalities, and a normal range of motion, Dr. Menio explained those findings were made during one examination, and the rest of the medical records showed Plaintiff has significant limitations.[4]  Dr. Menio's conclusions, however, are not consistent with the other evidence in the medical record as a whole.  Therefore, substantial evidence supports the ALJ's decision to give no weight to those conclusions.

First, at noted by the ALJ, Dr. Menio's finding is not consistent with the other medical record in the record as a whole.  For example, Plaintiff did not report having right shoulder pain

---

[4]To the extent Dr. Menio opined that Plaintiff is disabled and incapable of performing any competitive employment, such an opinion "involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight."  Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005); House v. Astrue, 500 F.3d 741, 745 (8th Cir. 2007) (A physician's opinion that a claimant is "disabled" or "unable to work" does not carry "any special significance," because it invades the province of the Commissioner to make the ultimate determination of disability).

or seek treatment for right shoulder problems from August 29, 2011, until February 8, 2013, during an appointment for medication refill and treatment for hypertension. Although Plaintiff was assessed for right shoulder pain on February 12, 2013, the treatment record is devoid of a notation of any physical examination of Plaintiff's right shoulder during treatment on that day. Just a few weeks later, on March 7, 2013, an x-ray of Plaintiff's right shoulder showed unremarkable results. Moreover, the ALJ noted that physical examination on June 12, 2012, by Dr. Zond showed Plaintiff to have a normal musculature, no joint deformity or abnormalities, and a normal musculoskeletal range of motion. The undersigned concludes, therefore, that the ALJ did not err in affording no weight to Dr. Menio's opinion from the hearing.

Additionally, Dr. Menio's opinion appears to rely on Plaintiff's subjective allegations of pain and limitations regarding his right shoulder. As already discussed above, the ALJ properly discredited Plaintiff's subjective complaints. In this regard, the ALJ observed that Dr. Menio's opinion regarding Plaintiff's chronic pain was inconsistent with Plaintiff's own activities. In particular, despite claims of pain and a very limited range of motion for his right shoulder, Plaintiff broke a finger on his right hand while boxing with a friend. Such activity, according to the ALJ, was "more consistent with [a] normal range of motion of the right upper extremity ... than an [alleged] inability to extend his arm more than four inches in front of his body." (Tr. 20)

Further, no other examining or treating physician in any treatment notes stated that Plaintiff was disabled or unable to work, or imposed limitations on his capacity for work. See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) (significant that no examining physician submitted medical conclusion that claimant is disabled or unable to work).

Thus, the ALJ did not err in giving no weight to Dr. Menio's opinion. Renstrom v.

Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) (ALJ properly gave treating physician's opinion non-controlling weight when that opinion was largely based on claimant's subjective complaints and was inconsistent with other medical experts). The undersigned finds that Dr. Menio's opinion is inconsistent with the medical records as a whole. The ALJ properly accorded Dr. Menio's opinion no weight inasmuch as his finding was inconsistent with, and unsupported by, the evidence of record.[5] For these reasons and the reasons discussed above with respect to the ALJ's evaluation of Plaintiff's own subjective complaints, the ALJ's decision to give no significant weight to Dr. Menio's opinion is supported by substantial evidence in the record.

## C.     Medical Evidence Supporting the RFC Assessment

Plaintiff further contends that the ALJ did not support his RFC determination with sufficient medical evidence, in violation of Lauer v. Apfel, 245 F.3d 700 (8th Cir. 2001). In particular, Plaintiff contends that the ALJ failed to obtain evidence addressing Plaintiff's ability to function in the workplace and his ability to perform light work. Defendant argues that there was medical evidence in the record that supported the ALJ's RFC assessment, citing the largely normal objective findings made during treatment. For the reasons stated below, the undersigned finds that the RFC is supported by substantial evidence with regard to Plaintiff's physical activities.

Plaintiff cites Lauer for the proposition that an RFC finding is a medical determination,

---

[5]Although not relied on by the ALJ, the medical evidence suggests that Plaintiff was still working. (Tr. 325) In the August 29, 2011, treatment record Laytons is listed as Plaintiff's employer. (Tr. 325) In the September 11, 2013, treatment note Plaintiff reported being stressed about his job. (Tr. 397) Absent a showing of deterioration, working after the onset of an impairment is some evidence of ability to work. See Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005).

and that the RFC must be based on at least some medical evidence.  See Lauer, 245 F.3d at 704 ("[S]ome medical evidence must support the determination of [Plaintiff's] RFC.").  Plaintiff's proposition is correct.  But as explained below, that ALJ adduced sufficient medical evidence to formulate Plaintiff's RFC.

A claimant's RFC is "the most a claimant can do despite [the claimant's] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009).  "The ALJ must assess a claimant's RFC based on all relevant credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)).  Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, the RFC involves a medical question. Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).  Thus, although the ALJ is not limited to considering only medical evidence, "some medical evidence 'must support the determination of the claimant's residual functional capacity, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace.'" Hutsell, 259 F.3d at 712 (quoting Lauer, 245 F.3d at 704).

In this case, the ALJ reviewed and cited the relevant medical records.  The ALJ noted that Plaintiff injured his shoulder in June 2011 and received post-surgical treatment for two months.  An x-ray taken on August 29, 2011, showed a healing, internally-fixated right anteroinferior glenoid fracture and right shoulder rotator cuff repair.  Dr. Keener's examination on August 29, 2011, showed Plaintiff could actively elevate to about 100 degrees with some scapular substitution and external rotation of 40 degrees, and Plaintiff had only subtle weakness

with resisted abduction and a strong external rotation.  The record shows that Plaintiff did not take any pain medication or seek medical treatment for his right shoulder until February 8, 2013. Before that date, Plaintiff failed to report right shoulder pain or limitation to any treatment provider, and his physical examinations showed no significant abnormalities and were essentially normal.  And a February 12, 2013, treatment note failed to document any abnormal clinical signs associated with Plaintiff's right shoulder, and there was no indication of significant decreased range of motion, tenderness, or motor deficits with Plaintiff's right upper extremity.  A referral form suggested Plaintiff's range of motion was restricted above 90 degrees.

The medical evidence does not support limitations more severe than those articulated in the RFC.  Giving benefit of the doubt, however, the ALJ limited Plaintiff's reaching above the shoulder-level with his non-dominant right hand and upper extremity.

It is clear that the ALJ considered the relevant evidence in assessing Plaintiff's RFC. Moreover, the medical evidence does not support limitations more severe than those articulated in the RFC.

The undersigned does not agree with Plaintiff that, because the treating doctors did not offer specific opinions about Plaintiff's ability to function in the workplace, their findings cannot constitute the requisite medical evidence to support the RFC.  Although the treating doctors did not offer opinions about Plaintiff's ability to work, or to lift, stand, or walk on a regular basis during the workday, the objective findings similar to those made by the treating doctors have previously been held sufficient to constitute medical evidence in support of a finding that a claimant can perform light or medium work, at least where other evidence in the record is consistent with the ALJ's conclusions.  See Steed v. Astrue, 524 F.3d 872, 876 (8th Cir. 2008)

(upholding the ALJ's finding that the plaintiff could perform light work based on largely mild or normal objective findings regarding her back condition, despite the fact that the medical evidence was "'silent' with regard to work-related restrictions such as the length of time she [could] sit, stand, and walk and the amount of weight she can carry"); Flynn v. Astrue, 513 F.3d 788, 789 (8th Cir. 2008) (finding that physicians' observations that the claimant had normal muscle strength and mobility constituted medical evidence supporting the ALJ's conclusion that the claimant could lift 20 pounds occasionally and 10 pounds frequently); Thornhill v. Colvin, 4:12 cv 1150 CEJ, 2013 WL 3835830, *12 (E.D. Mo. July 24, 2013) (finding that medical records supporting the ALJ's statement that "physical examinations have been essentially unremarkable and reveal normal independent gait with no evidence of spine or joint abnormality or range of motion limitation or muscle tenderness" constituted medical evidence in support of a finding that the claimant could perform medium work).  The undersigned finds that there is some medical evidence in the record that addresses Plaintiff's ability to function in the workplace, and thus the RFC is supported by substantial evidence in the record as a whole.

    Plaintiff also contends the ALJ failed to fully and fairly develop the record.  Plaintiff argues that the ALJ should have ordered a consultative examination to determine the extent of Plaintiff's permanent restrictions.  As explained below, the lack of an opinion from a consultative doctor does not, in this case, necessitate a finding that the ALJ failed to properly develop the record.

    "A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."  Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005).  "If the ALJ [does] not believe ... that the professional opinions available to him were sufficient to allow him

to form an opinion, he should ... develop[] the record to determine, based on substantial evidence, the degree to which [Plaintiff's] ... impairments limited [her] ability to engage in work-related activities."  Lauer, 245 F.3d at 704 (citation omitted).  This can be done by recontacting medical sources and by ordering additional consultative examinations, if necessary. See 20 C.F.R. § 404.1512; Sultan v. Barnhart, 368 F.3d 857, 863 (8th Cir. 2004).  "The regulations do not require the Secretary or the ALJ to order a consultative evaluation of every alleged impairment.  They simply grant the ALJ the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination."  Matthews v. Bowen, 879 F.2d 423, 424 (8th Cir. 1989).  "[I]t is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000) (alteration in the original).

Although it is an ALJ's duty to develop the record; it is the claimant's duty to prove his RFC.  See Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009).  Moreover, "[t]he ALJ does not 'have to seek additional clarifying statements from a treating physician unless a *crucial issue* is undeveloped.'"  Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010) (quoting Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004)).  "'The Commissioner's regulations explain that contacting a treating physician is necessary only if the doctor's records are inadequate ... to determine whether [the claimant] is disabled such as when the report from [the] medical source contains a conflict or ambiguity that must be resolved....'"  Jones v. Astrue, 619 F.3d 963, 969 (8th Cir. 2010) (quoting Goff, 421 F.3d at 791).

In this case, a crucial issue was not undeveloped; rather, it was resolved unfavorably to Plaintiff.  See, e.g., Steed v. Astrue, 524 F.3d 872, 876 (8th Cir. 2008) (finding that claimant's

failure to provide medical evidence supporting her allegations of work limitations "should not be held against the ALJ when there is medical evidence that supports the ALJ's decision"); Samons, 497 F.3d at 819 (finding the ALJ need not have contacted claimant's treating physician after finding that physician's opinion was inadequate to establish disability when the opinion was not inherently contradictory or unreliable). "Ultimately, the claimant bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment." Kamann v. Colvin, 721 F.3d 945, 950 (8th Cir. 2013). Plaintiff failed to do so.

In the instant case, there was sufficient medical evidence for the ALJ to determine that although Plaintiff had shoulder pain, it was not disabling pain. The medical records evidenced improvement with relatively little treatment after August 29, 2011. Further, neither the medical records nor the treating doctors suggested any significant functional limitations. The record provides a sufficient basis for the ALJ's decision, and he was not required to further develop the record. Accordingly, the undersigned does not find Plaintiff has established unfairness or prejudice that would warrant reversal for failure to develop the record in this case. See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995).

**VI.    Conclusion**

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the record as a whole. Although Plaintiff articulates why a different conclusion might have been reached, the ALJ's decision, and, therefore, the Commissioner's, was within the zone of choice and should not be reversed for the reasons set forth above. An ALJ's decision is not to be disturbed "'so long as the ... decision falls within the available zone of choice. An ALJ's decision is not outside the zone of choice simply because [the Court] might have reached a

different conclusions had [the Court] been the initial finder of fact.'" <u>Buckner v. Astrue</u>, 646

F.3d 549, 556 (8th Cir. 2011) (quoting <u>Bradley v. Astrue</u>, 528 F.3d 1113, 1115 (8th Cir. 2008)).

Accordingly, the decision of the ALJ denying Plaintiff's claims for benefits should be affirmed.

       **IT IS HEREBY ORDERED** that the decision of the Commissioner be **AFFIRMED**.  A

separate Judgment in accordance with this Memorandum and Order is entered this same date.

Dated this  18th  day of December, 2015.

*/s/ John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE